# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| CRYSTAL L. KRAMPITZ,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW SAUL, Commissioner of<br>the Social Security Administration,<br><br>Defendant. | CV 18-141-GF-JTJ<br><br>**MEMORANDUM<br>AND ORDER** |

## INTRODUCTION

Plaintiff Crystal L. Krampitz (Krampitz) brought this action to obtain judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner), denying her application for disability benefits, disability insurance benefits, and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383(f).

## JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Krampitz resides in Valley County, Montana. 29 U.S.C. § 1391(e)(1); L.R. 1.2(c)(3). The parties have consented to have the undersigned

conduct all proceedings in this matter and enter judgment. (Doc. 10).

## BACKGROUND

Krampitz is 30 years old. (Doc. 7 at 62). Krampitz has a high school education. (Doc. 7 at 43). Krampitz's intellect is below average. Krampitz has a full scale IQ of 79. (Doc. 7 at 385-388). Krampitz has a history of post traumatic stress disorder (PTSD). (Doc. 7 at 477-484). Kramptiz's PTSD was caused by physical and sexual abuse she suffered as a child. *Id*. Krampitz has past work experience as a sandwich maker and as a personal care attendant. (Doc. 7 at 22, 43-44).

Krampitz filed her applications for disability and supplemental security income benefits on June 23, 2015. (Doc. 7 at 192-203). Krampitz alleged that she became disabled on August 1, 2012, when she was 23 years old. (Doc. 7 at 22). Krampitz alleged that she became disabled due to a learning disorder, PTSD, depression, anger, scoliosis and suicide attempts. (Doc. 7 at 62, 73).

An administrative law judge (ALJ) conducted a hearing on Krampitz's application for social security benefits on August 25, 2017. (Doc. 7 at 15). The ALJ issued his decision on November 15, 2017. (Doc. 7 at 15-24). The ALJ determined that Krampitz did not qualify for disability benefits, disability insurance benefits, or supplemental security income benefits because she

possessed the residual functional capacity to perform jobs that exist in significant numbers in the national economy. (Doc. 7 at 23-24).

Krampitz requested that the Social Security Administration (Administration) review the ALJ's decision. The Administration denied Krampitz's request. (Doc. 7 at 6-10). The Administration's denial made the ALJ's decision the final decision of the Commissioner. *Id*.

Krampitz filed the present action on October 31, 2018. (Doc. 2). The matter has been fully briefed. (Docs. 12, 13 and 14). The Court is prepared to rule.

## **STANDARD OF REVIEW**

The Court's review in this matter is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

# BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant cannot perform her previous work and she cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A),(B)).

The Social Security Administration regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof under steps one through four. *Bustamante*, 262 F.3d at 954. The Commissioner bears the burden of proof under step five. *Id.* The five steps of the inquiry are:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Does the claimant have a severe impairment? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Do any of the claimant's impairments "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante*, 262 F.3d at 954.

## BACKGROUND

### A. ALJ's determination

At step one, the ALJ determined that Krampitz had not engaged in substantial gainful activity from her alleged onset date of August 1, 2012, through September 30, 2013, the date she was last insured. (Doc. 7 at 17).

At step two, the ALJ found that Krampitz possessed the following two severe mental impairments: affective disorder and personality disorder. (Doc. 7 at 18). The ALJ found that Krampitz also possessed the following non-severe physical impairments: lumbar spine degenerative disc disease, thoracic spine

5

scoliosis, obesity, and teeth impairment. *Id*.

At step three, the ALJ found that Krampitz did not possess an impairment, or combination of impairments, that met or was medically equal to the severity of one of the listed impairments. (Doc. 7 at 18). The ALJ determined that Krampitz's mental impairments caused only moderate limitations with respect to her ability to understand, remember, and apply information; interact with others; concentrate; persist; maintain pace; and manage herself. (Doc. 7 at 18).

Before considering step four, the ALJ determined Krampitz's residual functional capacity. The ALJ determined that Krampitz possessed the residual functional capacity to perform a full range of work at all exertional levels subject to the following nonexertional limitations: 1) Krampitz can understand, remember, and carry out short and simple instructions; 2) Krampitz cannot work directly with the public; 3) Krampitz can have occasional interpersonal contact with coworkers and supervisors; 4) Krampitz can tolerate only occasional task changes; and 5) Krampitz cannot perform high pace production jobs. (Doc. 7 at 19).

At step four, the ALJ presented a hypothetical question to a vocational expert. The ALJ asked the vocational expert to consider a hypothetical person with the same age, work experience and educational background as Krampitz who possessed the limitations described above. (Doc. 7 at 55). The ALJ asked the

vocational expert whether such a hypothetical person would possess the residual functional capacity to perform Krampitz's past relevant work. *Id*. The vocational expert responded that such a person could not perform Krampitz's past relevant work as a sandwich maker and personal care attendant. *Id*.

At step five, the ALJ asked the vocational expert whether such a hypothetical person would possess the residual functional capacity to perform other jobs that exist in significant numbers in the national economy. (Doc. 7 at 55-56). The vocational expert responded that a person with Krampitz's residual functional capacity could perform work as a hand packager, laundry worker and kitchen helper. (Doc. 7 at 56). The ALJ determined that Krampitz was not disabled based on the vocational expert's testimony. (Doc. 7 at 23-24).

### B. Krampitz's Position

Krampitz argues that the Court should reverse the Commissioner's decision and remand the case to the Commissioner for an award of benefits or for further proceedings. (Doc. 12 at 32). Krampitz argues that the Commissioner's decision should be reversed for the following reasons:

1. The ALJ erred at step two when he failed to address whether her borderline intellectual functioning and PTSD qualified as severe mental impairments;

2. The ALJ erred by failing to provide specific, clear and convincing reasons for discounting her testimony regarding the limiting effects of her borderline intellectual functioning and PTSD; and

3. The ALJ erred when he presented a hypothetical question to the vocational expert that did not include the limitations related to her borderline intellectual functioning and PTSD.

(Doc. 12 at 6-7, 21).

### C. Commissioner's Position

The Commissioner argues that the Court should affirm the ALJ's decision because his decision was based on substantial evidence and was free of legal error.

## DISCUSSION

### A. ALJ's failure to determine at step two whether Krampitz's borderline intellectual functioning and PTSD qualified as severe mental impairments

Krampitz argues that the ALJ erred at step two when he failed to determine whether her borderline intellectual functioning and PTSD qualified as severe mental impairments.

Step two of the five-step sequential inquiry is a threshold screening device. Step two is designed to "screen out" claimants who are ineligible for disability benefits because they have only minor impairments. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). The ALJ determines, at step two, whether the claimant has at least one severe impairment, or a combination of impairments, that

significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant is able to show that she has at least one severe impairment that significantly limits her physical or mental ability to do basic work activities, the ALJ must proceed to step three. An ALJ's failure to rate all of a claimant's impairments at step 2 results in no prejudice to the claimant so long as the ALJ proceeds to step three. *Buck*, 869 F.3d at 1049.

Here, the ALJ found that Krampitz had two severe mental impairments: affective disorder and personality disorder. Based on this finding, the ALJ preceded to step three. The ALJ's failure to address, at step two, whether Kramptiz's borderline intellectual functioning and PTSD also qualified as severe mental impairments resulted in no prejudice to Kramptiz. *Id*.; see also, *Gray v. Commissioner of Social Sec. Admin.*, 365 Fed. Appx. 60, 61 (9th Cir. 2010) (unpublished). No reversible error occurred. *Id*.

### B. Krampitz's testimony regarding the limiting effects of her borderline intellectual functioning and PTSD

As discussed above, Krampitz was diagnosed with borderline intellectual functioning in 2008. Krampitz was diagnosed with PTSD in 2013. The ALJ found that Krampitz's borderline intellectual functioning and PTSD could reasonably be expected to cause the symptoms she alleged. (Doc. 7 at 20). The

9

ALJ stated, however, that he discounted Krampitz's "statements concerning the intensity, persistence and limiting effects" of her borderline intellectual functioning and PTSD because they were "not entirely consistent with the medical evidence and other evidence in the record." *Id*.

Krampitz argues that the ALJ's decision should be set aside because he failed to provide specific, clear and convincing reasons for discounting her testimony regarding the limiting effects of her borderline intellectual functioning and PTSD.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Rather, the claimant need only show that her impairment could reasonably have caused some degree of the symptoms. *Id*.

If the claimant satisfies the first step of this analysis, and there is no

evidence of malingering, the ALJ may reject the claimant's testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must identify the portion of the claimant's testimony that is not credible and the ALJ must describe the evidence that undermines the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The ALJ's findings must be sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). General findings by the ALJ are not sufficient. *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).

Here, the ALJ stated he had discounted Krampitz's statements regarding the limiting effects of her borderline intellectual functioning because: 1) the record "reveal[ed] no further diagnoses of borderline intellectual functioning [after 2008];" 2) Krampitz had "continued to job search" from 2015 through 2017 "which indicated that she believed she could work;" and 3) Krampitz's "vocational rehabilitation records reveal[ed] [that she had] work[ed] at a restaurant and was performing housekeeping services" in 2017. The reasons provided by the ALJ were specific and convincing.

11

The ALJ stated that he had discounted Kramptiz's statements regarding the limiting effects of her PTSD because Kramptiz's psychological treatment from 2013 through 2017 showed "generally normal psychological signs when [Krampitz] did not have situational stressors such as divorce or financial trouble." (Doc. 7 at 21). The ALJ discussed Kramptiz's psychological treatment records from the 2013 through 2017. *Id*. The ALJ noted although Kramptiz had "periods of mental strain, she . . . reported she could work and [she did] work" during the period from 2013 through 2017. *Id*. The reasons provided by the ALJ were specific and convincing. No legal error occurred.

### C. The ALJ's hypothetical question to the vocational expert

Krampitz argues that the ALJ's hypothetical question to the vocational expert was erroneous because it did not include all of the mental limitations related to her borderline intellectual functioning and PTSD.

The record does not support Kramptiz's argument. Kramptiz stated in her June 28, 2015, function report that she could follow written instructions "pretty good," but had difficulty with spoken instructions. (Doc. 7 at 254). Kramptiz testified during the August 25, 2017, hearing that she occasionally misunderstood the instructions of her supervisors, and occasionally had difficulty staying focused. (Doc. 7 at 47-49). Consistent with Kramptiz's function report and testimony, the

12

ALJ restricted Kramptiz to work that required short and simple instructions that only changed occasionally. (Doc. 7 at 19).

Kramptiz stated in her June 28, 2015, function report that she could not handle stress well. (Doc. 7 at 255). Consistent with the report, the ALJ restricted Kramptiz to work that did not involve high pace production. (Doc. 7 at 19).

Krampitz stated in her June 28, 2015, function report that she generally did not get along with authority figures. (Doc. 7 at 255). Consistent with the report, the ALJ restricted Kramptiz to work that involved only "occasional interpersonal contact" with supervisors. (Doc. 7 at 19).

Kramptiz testified during the August 25, 2017, hearing that she occasionally had disagreements with co-workers. (Doc. 7 at 46). Consistent with this testimony, the ALJ restricted Kramptiz to work that involved only "occasional interpersonal contact" with coworkers, and no direct contact with the public. (Doc. 7 at 19).

The ALJ's hypothetical question to the vocational expert adequately addressed all of the mental limitations claimed by Kramptiz. No legal error occurred. See *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).

## CONCLUSION

The ALJ's decision was supported by substantial evidence. The ALJ did not commit legal error.

## ORDER

1. The Commissioner's decision to deny benefits to Krampitz is AFFIRMED.

2. This case is DISMISSED with prejudice.

3. The Clerk is directed to enter judgment accordingly.

DATED this 3rd day of April, 2020.

_____
John Johnston
United States Magistrate Judge